UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVIS JAMES,

         Plaintiff,

   v.

DANA GAGE, Medical Director F.H.S.D., et al.,

         Defendants.

No. 15-CV-106 (KMK)

OPINION AND ORDER

Appearances:

Travis James
Ossining, NY
*Pro se Plaintiff*

Janice Powers, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

  Pro se Plaintiff Travis James ("Plaintiff") filed the instant Action, pursuant to 42 U.S.C. § 1983, against Medical Director Dana Gage ("Gage"), Nurse Barbara Furco ("Furco"), Nurse Albert Adeknami ("Adeknami"), provider Bigaud ("Bigaud"), and Lieutenant Thayer ("Thayer") (collectively, "Defendants"). (*See generally* Second Amended Complaint ("SAC") (Dkt. No. 83).) Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments when they were deliberately indifferent to his need for hip replacement surgery and punished him with false misbehavior reports and keeplock confinement for seeking medical treatment, and that Defendant Gage violated Plaintiff's rights under the First Amendment by retaliating against him for seeking medical treatment. (*See generally id.*)

Before the Court is Defendants' Partial Motion To Dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(c). (*See* Defs.' Not. of Mot. ("Defs.' Mot.") (Dkt. No. 96).)[1] For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

Plaintiff's allegations and the procedural history of this case have been summarized in detail in the Court's previous Opinions. (June 5, 2018 Op. & Order ("June 5, 2018 Op.") 2–12 (Dkt. No. 82); Mar. 29, 2019 Op. & Order ("Mar. 29, 2019 Op.") 2–12 (Dkt. No. 95).) The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant Motion, which pertains to Plaintiff's allegations that Defendant Gage retaliated against him for seeking medical treatment in violation of his First Amendment rights.

The following facts are drawn from Plaintiff's SAC, as well as the Court's Opinion and Order on Defendants' previous Motion To Dismiss the SAC, (*id.* at 2–9), and are presumed to be true for the purposes of this Motion To Dismiss. During the time of the alleged events, Plaintiff was a convicted prisoner at Sing Sing Correctional Facility in Ossining, New York ("Sing Sing"). (*Id.* at 2.)

In 2004, Plaintiff had hip replacement surgery. (SAC ¶ 1.)[2] Ten years later, on February 3, 2014, he began experiencing "extreme pain" in the hip replacement area. (*Id.*) Between

---

[1] In accordance with the Court's prior Opinion, (Mar. 29, 2019 Op. & Order 33–36 (Dkt. No. 95)), Defendants move only to dismiss Plaintiff's First Amendment claim against Gage, (Defs.' Mem. of Law in Supp. of Mot. To Dismiss 2 (Dkt. No. 97)).

[2] All citations to paragraph numbers in the SAC refer to the section entitled "Facts." For references to all other sections, the Court will cite to the page number to avoid confusion.

March 3, 2014, and October 7, 2014, "when [P]laintiff received a [second] [h]ip-replacement surgery," (*id.* ¶ 41), Plaintiff went to the emergency sick call approximately 33 times complaining of "intense pain," (*id.* at 8). According to Plaintiff, he was "[f]orce[d] to walk in extreme pain" and was not "provided with proper medical equipment, i.e., crutches, cane, wheelchair, or bus pass." (*Id.* (quotation marks omitted).)

The first interaction with Defendant Gage that Plaintiff describes took place on April 15, 2014 at 9:30 a.m., when Plaintiff "was carried to the facilities clinic by an inmate because he could not walk and was in extreme pain." (*Id.* ¶ 21.) He was evaluated by Adeknami, who determined that he had a high fever and a blood pressure reading of 145/80. (*Id.*) Approximately one hour later, at 10:25 a.m., Plaintiff still had a high fever and was experiencing pain, but his blood pressure reading was 130/80. (*Id.* ¶ 22.) Adeknami called Gage at home, and Gage told Adeknami to "write out" a psychiatric consult, give Plaintiff Naprosyn for his pain, and return Plaintiff to his housing unit "without crutches or [a] cane." (*Id.*)

On April 16, 2014 at 10:00 a.m., Plaintiff again went to emergency sick call, still experiencing pain in his left hip. (*Id.* ¶ 23.) Gage "began to argue with [P]laintiff about his continued complaints and coming to emergency sick call so much." (*Id.*) Gage asked Officer Sullivan to "write [P]laintiff a misbehavior report and escort [P]laintiff out of the facility clinic." (*Id.*) Officer Sullivan said he would not do so, explaining that Plaintiff "was in pain" and saying that Gage "was not his boss." (*Id.*) Gage nevertheless issued a misbehavior report and placed Plaintiff on "[k]eeplock status," citing Plaintiff for three violations: "Refusing a Direct Order," "Failure to Follow Direction," and "Disturbance." (*Id.* ¶ 24.) Gage did not provide Plaintiff with any pain medication, crutches, or a cane, and Plaintiff had to be helped back to his cell by two inmates. (*Id.*)

3

On April 17, 2014, Plaintiff went back to emergency sick call at 9:45 a.m., escorted by Officer Castle. (*Id.* ¶ 25.) Upon entering the facility emergency room, Plaintiff vomited in a garbage can "because of the pain in his left hip." (*Id.*) Gage "became upset" and told Officer Castle to remove Plaintiff from the clinic and write a misbehavior report "without examining [P]laintiff or providing any form of medical attention." (*Id.*) Plaintiff was taken back to his cell "without any pain medication or medical attention," remained on keeplock status, and was issued another misbehavior report by Gage. (*Id.* ¶ 26.) Later that day, at 11:45 a.m., Plaintiff returned to emergency sick call and said that he needed to "be sent to the outside hospital," but Gage "refused to see him." (*Id.*) Instead, Gage ordered Plaintiff to be placed on "strict bed-rest as well as keeplock status." (*Id.* ¶ 27.) That same day, Plaintiff received a visit from his family, and "was made to walk to the facility visitroom, which is approximately a half-mile walk with [] numerous stairs exceeding 80 steps . . . , in extreme pain [and] without crutches, cane, or facility bus pass." (*Id.* ¶ 28.) While visiting with his family, Plaintiff spoke with Sergeant Johnson and explained that "his leg was hurting"; at Plaintiff's request, Sergeant Johnson made a phone call, and Plaintiff was admitted to the "facilities hospital." (*Id.* ¶ 29.) Gage "became u[p]set" because of Plaintiff's conversation with Sergeant Johnson, and in response "had [P]laintiff admitted to a [k]eeplock isolation hospital room with no property, phones, [or] TV," where he was "heavily medicated to the point that [P]laintiff had no idea as to where he was for a total of twenty days." (*Id.*) While Plaintiff was in isolation, Adeknami was the late night facility nurse, and refused to provide Plaintiff with pain medication, "even though [P]laintiff informed him that he was in extreme pain and call[ed] for help in the infirmary." (*Id.* ¶ 31.) On April 19, 2014, Plaintiff received a misbehavior report dated April 17, 2014, the day he was placed in the hospital. (*Id.* ¶ 30.) The report was written by Gage and charged Plaintiff with four violations: failure to obey

4

a direct order, verbal interference with medical personnel, giving incomplete or misleading information, and "conduct disruptive to functioning unit." (*Id.*)

On April 26, 2014, Plaintiff "went on an outside trip" and underwent a bone scan. (*Id.* ¶ 32.) Upon his return, Plaintiff "was still isolated in the Hospital without clothing, pain medication, cane, crutches, or any essential necessities" until April 29, 2014. (*Id.*) On May 2, 2014 at 6:45 a.m., Plaintiff went to emergency sick call, where he told Adeknami that he was still experiencing extreme pain in his left hip and asked about the status of his bone scan. (*Id.* ¶ 33.) Adeknami "could not tell [P]laintiff anything" about his bone scan, and "did not provide any medical assistan[ce] and sent [P]laintiff back to his cell." (*Id.*) On May 5, 2014 at 12:21 a.m., Plaintiff went to emergency sick call and again complained to Adeknami about the "extreme pain in his left hip," but was not given "any form of medical assistance"; however, Adeknami gave Plaintiff a slip to see his medical provider. (*Id.* ¶ 34.) On May 6, 2014 at 12:05 a.m., Plaintiff went to emergency sick call and once again complained to Adeknami about his hip pain. This time, Adeknami called "Dr. Slam" at home, who told him to give Plaintiff 500 milligrams of Robaxin "and a slip for his [p]rovider later in the morning." (*Id.* ¶ 35.) On May 7, 2014, Plaintiff "had a medical call[-]out" with an unnamed doctor about his condition, "but the escort [o]fficer never came to take him to the appointment." (*Id.* ¶ 36.)

On May 10, 2014, Plaintiff went to emergency sick call complaining of the same left hip pain. (*Id.* ¶ 37.) Plaintiff was examined, and it was determined that he had a "high fever" with a blood pressure reading of "126 over 82." (*Id.*) He was then allowed to see "PA Muthra." (*Id.*) The same day, Defendant Thayer "commenced both of [P]laintiff['s] hearings" pertaining to the misbehavior reports dated April 16, 2014 and April 17, 2014. (*Id.* ¶ 38.) At the conclusion of the hearings, Thayer told Plaintiff, "I would find you not guilty, but Gage is someone important."

(*Id.*)  Plaintiff "was found guilty of all charges" and was "sanctioned with a 30-day loss of Packages, Commissary, and Phones."  (*Id.*)

Plaintiff visited emergency sick call "a number of [additional] times" before his second hip replacement surgery on October 7, 2014.  (*Id.* ¶¶ 39–41.)

B. Procedural Background

Plaintiff filed an initial Complaint against Furco, Gage, and "Abe Kanari" on January 6, 2015.  (Compl. (Dkt. No. 2).)  He was granted in forma pauperis status on January 22, 2015.  (Dkt. No. 4.)  The Court held a pre-motion conference at which it granted Plaintiff leave to file an amended complaint by November 13, 2015, (*see* Dkt. (entry for Sept. 24, 2015)), which Plaintiff did, this time also naming Adeknami (previously included in the Complaint as "Abe Kanari"), Bigaud, and Thayer as Defendants, (First Am. Compl. (Dkt. No. 39)).

On January 27, 2018, Defendants filed an Answer, (Dkt. No. 49), and pursuant to a briefing schedule set by the Court, (Dkt. Nos. 59, 61), Defendants filed a Motion To Dismiss on October 13, 2017, (Dkt. No. 63).  Plaintiff filed a response on February 20, 2018, (Dkt. No. 69), and Defendants filed a reply on April 13, 2018, (Dkt. No. 74).  On June 5, 2018, the Court issued an Opinion and Order granting in part and denying in part Defendants' Motion To Dismiss ("June 5, 2018 Opinion").  (*See* June 5, 2018 Op.)  The Court first dismissed Plaintiff's claims against Adeknami for lack of personal involvement in the alleged constitutional violations.  (*Id.* at 16–17.)  The Court also dismissed all but one of Plaintiff's Eighth Amendment claims.  (*Id.* at 19–33.)  Finally, the Court found that Plaintiff had sufficiently pled his Fourteenth Amendment procedural due process claim against Thayer.  (*Id.* at 33–36.)  The Court dismissed Plaintiff's claims without prejudice, giving leave to amend within 30 days.  (*Id.* at 36–37.)

Plaintiff timely filed his Second Amended Complaint ("SAC") on July 6, 2018. With leave of the Court, (Dkt. No. 85), Defendants moved to dismiss on August 24, 2018, (Defs.' Not. of Mot. to Dismiss (Dkt. No. 90); Defs.' Mem. of Law in Supp. of Mot. To Dismiss (Dkt. No. 91)). Plaintiff filed a response on November 6, 2018. (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss (Dkt. No. 93).) Defendants filed a reply on November 16, 2018. (Defs.' Reply in Further Supp. of Mot. To Dismiss (Dkt. No. 94).)

On March 29, 2019, the Court issued an Opinion and Order granting in part and denying in part Defendants' Partial Motion To Dismiss ("March 29, 2019 Opinion"). (*See generally* Mar. 29, 2019 Op.) The Court found that Plaintiff's Eighth Amendment claim against Furco survived but dismissed with prejudice the Eighth Amendment claims against Bigaud, Gage, and Adeknami. (*Id.* at 16–33.) "Construing the [SAC] liberally, and taking into consideration the arguments included in Plaintiff's memorandum," the Court also interpreted the SAC to include a First Amendment retaliation claim against Gage. (*Id.* at 33.) Finding that the Second Circuit has not definitively ruled on whether there is a First Amendment right to demand necessary medical attention and that Defendants did not raise a qualified immunity defense to this claim, the Court denied Defendants' Motion To Dismiss without prejudice and granted Defendants leave to move for dismissal of Plaintiff's First Amendment claim on the basis of qualified immunity. (*Id.* at 35–36.)

Defendants moved to dismiss Plaintiff's First Amendment claim against Defendant Gage on April 8, 2019. (Defs.' Mot.; Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 97).) After being granted a 30-day extension, (Dkt. No. 99), Plaintiff filed a response on May 23, 2019, (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.")

(Dkt. No. 101)). Defendants filed a reply on June 4, 2019. (Defs.' Reply in Further Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 102).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss under Federal Rule of Civil Procedure 12(c). "In deciding a Rule 12(c) motion, [the Court] employ[s] the same standard applicable to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (alterations and quotation marks omitted). The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-

8

specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). The Court must also "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [the complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may

9

consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B.  Analysis

1.  Applicable Law

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (quotation marks omitted).

The Supreme Court has held that when evaluating an asserted qualified immunity defense, the Court may begin by examining whether a reasonable officer in Defendants' position would have believed his or her conduct would violate the asserted constitutional right.  *See Pearson*, 555 U.S. at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001), and explaining that judges are no longer required to begin by deciding whether a constitutional right was violated but are instead "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").  The Supreme Court has further instructed that "[t]o be clearly established, a right must be sufficiently clear that every reasonable

official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (second alteration in original) (citations and quotation marks omitted). Furthermore, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 665 (citations and quotation marks omitted). Otherwise stated, to determine whether a right is clearly established, courts must determine "whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011).

Given that "qualified immunity is not only a defense to liability, but also provides immunity from suit," a court should resolve a "defendant's entitlement to qualified immunity . . . 'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson*, 555 U.S. at 231–32). "[U]sually, the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion," but a district court may grant a Rule 12(b)(6) motion on the ground of qualified immunity if "the facts supporting the defense appear on the face of the complaint." *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)). As a result, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] . . . the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* at 436 (quotation marks omitted).

### 2. Application to Plaintiff's Retaliation Claim

Defendants argue that a prisoner's right to seek or demand medical attention has not been clearly established by either the Supreme Court or the Second Circuit. (Defs.' Mem. 4–7.) The Court agrees. *See Brown v. White*, No. 08-CV-200, 2010 WL 985184, at *12 (N.D.N.Y. Mar. 15, 2010) ("The court has found no Supreme Court authority as to whether the First Amendment confers upon a prisoner the right to demand necessary medical attention[,] and courts in the Second Circuit have not decided the issue."); *see also Ross v. Koenigsmann*, No. 14-CV-1321, 2016 WL 11480164, at *17 (N.D.N.Y. Sept. 8, 2016) ("[T]he [c]ourt is aware of no authority holding that [an] inmate's request for medical attention is protected conduct under the First Amendment."), *adopted by* 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016). Indeed, when faced with such a claim, district courts in the Second Circuit frequently assume, but do not decide, that requests for medical attention are protected by the First Amendment for the purpose of analyzing the merits of a retaliation claim. *See, e.g.*, *Green v. Venettozzi*, No. 14-CV-1215, 2019 WL 624922, at *2 (N.D.N.Y. Feb. 14, 2019) (noting that the magistrate judge "assumed for the purposes of the motion[] that [the] plaintiff's request [for medical treatment] constitute[d] protected activity" (quotations and alteration omitted)); *Brown*, 2010 WL 985184, at *13 ("We will assume, for the purpose of the motion for summary judgment with respect to a retaliation claim, that the First Amendment recognizes an inmate's right to demand necessary medical care or complain about inadequate care."); *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 299–300 (S.D.N.Y. 2003) (noting the absence of relevant Second Circuit authority, and stating, "one court in this district held that although doubtful that a prisoner has a protected interest in repeatedly complaining about medical ailments, the protected nature of a right to seek basic medical treatment is assumed"), *aff'd in part, vacated in part*, 380 F.3d 106 (2d Cir. 2004);

12

*Benitez v. Pecenco*, No. 92-CV-7670, 1995 WL 444352, at *5 (S.D.N.Y. July 27, 1995) ("While I do not believe that an inmate has a constitutional right to 'repeatedly' complain about his medical ailments, I need not reach that question, for I will assume for purposes of this motion that a substantive constitutional right has been implicated." (citation omitted)); *cf. West v. McCaughtry*, 971 F. Supp. 1272, 1277 (E.D. Wisc. 1997) ("If a prisoner were disciplined solely because of his requests for proper medical treatment, it would surely be a constitutional violation.").[3] Given the absence of guidance from the Supreme Court and the Second Circuit, Defendants are entitled to qualified immunity "because there is no 'clearly established right' under the First Amendment for inmates to request medical attention." *Ross*, 2016 WL 11480164, at *18.

Plaintiff points to a "volume of decisional law" that he argues establishes the right to seek medical attention under the First Amendment. (Pl.'s Mem. 4.) However, many of the cases cited by Plaintiff relate to retaliation for engaging in clearly established protected activity, such as filing lawsuits or complaints through prison grievance procedures. These cases are therefore

---

[3] Plaintiff misinterprets a Second Circuit summary order in arguing that a right to request medical attention has been clearly established. (Pl.'s Mem. 3.) In this order, the Second Circuit merely assumed that if a constitutional right to request medical attention did exist, the plaintiff had failed to state a sufficient retaliation claim. *Maxwell v. City of New York*, 108 Fed. Appx. 10, 11 (2d Cir. 2004) ("[E]ven if [plaintiff's] request for medical attention can be considered a constitutionally protected statement, the delays and treatment alleged . . . are de minimis inconveniences . . . of the kind normally experienced by other persons under arrest." (citation, quotations, and italics omitted)).
   Plaintiff similarly references a New York State regulation, N.Y. Comp. Codes R. & Regs. Tit. 10, § 405.7(c)(19), to contend that patients have a right to complain of medical needs without fear of reprisal. (Pl.'s Mem. 3.) Section 1983, however, "provides a cause of action against any person who deprives an individual of *federally* guaranteed rights under color of state law." *Scalpi v. Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858925, at *3 (S.D.N.Y. Feb. 29, 2016) (emphasis added) (quotation marks omitted) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)). Thus, the existence of a state regulation is not determinative of whether Plaintiff can successfully state a claim under § 1983.

inapposite. *See Espinal v. Goord*, 558 F.3d 119, 128–29 (2d Cir. 2009) ("There is no dispute that [plaintiff's] earlier federal lawsuit . . . was a protected activity."); *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) ("[Plaintiff] has sufficiently alleged [] participation in a protected activity: the use of the prison grievance [and court] system."); *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("[T]he prosecution and settlement of a lawsuit and the filing of grievances were constitutionally protected activities."); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (alleging retaliation in response to inmate-filed grievances through the prison grievance committee). While the right to file lawsuits or grievances in prison has been clearly established as constitutionally protected activities, the right to request medical attention has not.

Plaintiff also argues that a right may be clearly established "so long as this [C]ircuit's decisions clearly foreshadow a particular ruling on the issue." (Pl.'s Mem. 4.) Again, the cases cited by Plaintiff are distinguishable. For example, in *Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997), a case related to the appropriate standard of suspicion for strip searches, the Second Circuit found that "three other circuits had established a 'reasonable suspicion' standard for strip searches," and the Second Circuit had already applied such a standard in several decisions. *Id.* at 79. Plaintiff also cites *Shabazz v. Coughlin*, 852 F.2d 697 (2d Cir. 1988), in support of his argument. (Pl.'s Mem. 4.) There, the Court found that a law was not "clearly established" when no Second Circuit precedent existed that "clearly foreshadow[ed] a ruling," and no precedent in other circuits "condemn[ed] or condon[ed] such practices." *Shabazz*, 852 F.2d at 701. Similarly, the Second Circuit has yet to "foreshadow a ruling" with respect to medical demands and requests. Thus, a constitutional right to request medical attention is not clearly established, and Gage is entitled to qualified immunity.

14

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted. Plaintiff's First Amendment claim against Gage is dismissed with prejudice on qualified immunity grounds, and therefore, any amendment would be futile. *See Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) ("[T]he district court has the discretion to deny leave [to amend] if there is a good reason for it, such as futility . . . ." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Eighth Amendment claims against Furco and the Due Process claim against Thayer remain.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 96), terminate Defendant Gage from the docket, and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: November 21, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE